THE MISSOURI PACIFIC RAILWAY COMPANY ET AL. V.
PATRICK MCKERNAN.

No. 6947.

**Fact Case—Contributory Negligence—Due Care.**—See facts upon which it is held that the going upon and along a railway track in front of a moving train was negligence such as to prevent such party from recovering for injuries inflicted upon him by the train running upon him. The facts also show due care on part of the employes on the train.

APPEAL from Bexar. Tried below before Hon. G. H. NOONAN.

Appellee (plaintiff below) brought this suit against the Missouri Pacific Railway Company and the International & Great Northern Railway Company, for damages sustained by him by reason of injuries inflicted upon him August 19, 1884, by the servants of appellants in the movements of a train in their yard at San Antonio, Texas.

Patrick McKernan testified: "I am the plaintiff in this cause. About 7:30 a. m. on the 31st day of July, 1884, in the city of San Antonio and county of Bexar, and in the yards of the International & Great Northern Railway Company, I received the injury of which I complain in this suit. I was boarding at Mrs. McDonald's, who kept a boarding house for some of the employes of the International & Great Northern Railway Company just west of the railway track and on the property of the railway company. On the morning of the 31st of July, 1884, I got up and washed my face and put on my clothes, as usual. I then ate my breakfast and started down to the postoffice about 7:30 o'clock. There was a path that ran from the boarding house southward down the railway track a few feet west of the track for some distance. This path then went into the railway track and down between the rails on the track until you came to a little culvert through which the irrigation ditch flows. At this point the path passed entirely across the track to the east side and then down through the railway company's yard to where the street car line begins, upon which I expected to go up town that morning. I had left the boarding house and had gone down this path, and had got onto the railway track and was walking down the center of the track. The first thing I knew just after I had stepped upon the track I heard a man halloo at me. I turned round

to the left, and the car was right upon me. I put my left hand upon the car to help me off the track. The car struck me in the back and knocked me off to the west side. * * * At the time I was struck I had good eyes, good hearing, and good health. It is down grade from the switch to the coal bin. . I do not think I had left the house more than two minutes before I was struck. It was about forty yards from Mrs. McDonald's to the place where I got struck. I had been on the track for only a short distance when I was injured, about thirty or forty feet. I was a railway contractor and had been for many years. I was always contracting. * * * I boarded at Mrs. McDonald's, but neither the engineer nor fireman nor any of the employes upon the train that struck me boarded there. I did not see any cars upon the track when I first started from the house. I did not look northward toward the switch for cars, as far as I can recollect, when I started out. I was not employed by the railway company at the time I was injured. I was merely boarding at Mrs. McDonald's."

Cross-examined: "I have contracted with a great many roads and have aided in the construction of a good many. I have done work upon the construction of the International & Great Northern Railway and also of the Mexican National Railway. Contracting has been my business for many years, and I know all about the working of cars upon railways. I knew where the International & Great Northern Railway Company's yards were, and had been through them frequently going to and from Mrs. McDonald's. When I was struck I knew I was in the International & Great Northern Railway Company's yard. I knew that this was a busy place upon the railway, and that engines and cars were continually being switched up and down the yard upon the various tracks. I knew also that it was a dangerous place for me to be without keeping a lookout. When I came out of the house and was walking down the path and along the center of the track I did not look around much for cars. I was going to the postoffice after a letter that I expected, and did not think about the cars. I just looked in front of me while I was walking. I did not turn around to look behind me at any time except when the car was right upon me and struck me. I don't know as I was thinking about any cars. I had good hearing and good sight, and could have discovered the cars if I had looked around sooner before they struck me. There was no obstruction up or down the track. The view was perfectly clear and open both ways. From the time I started out I did not look for any train nor listen for any. I may have said on the last trial of this cause that I had been on the track about twenty feet when I was struck, but I have thought about the matter since then and think I had been walking on the track for about thirty or forty feet."

J. H. Rogers testified for plaintiff: "I am a brakeman on the San Antonio & Aransas Pass Railway. An engine shoving two cars before

it on a level at the rate of three miles an hour can be stopped within two car lengths. The usual length of cars is thirty feet; there are some twenty-eight-foot cars and some thirty-four-foot cars."

Cross-examined: "If an engine was going down grade (as McKernan said this was) at the rate of five or six miles an hour, shoving two freight cars ahead of it, the engine could not be stopped inside of six or eight car lengths."

Joseph Watson testified for the defendant by deposition: "On July 31, 1884, I was switchman in International & Great Northern yard. On that day I saw him walking down the International & Great Northern track in the yard. When I first saw him he was not on the track, but was walking on the ground near the International & Great Northern Railway track, on the west side of the track of the railway. He was going south. * * * When I first saw McKernan the train was going south to the coal bin, and Pat McKernan was going south toward the railway depot building. At this time McKernan was not on the track or switch, but was walking on the ground in about ten feet of the railway track and on the west side of the track, and about thirty-five or forty feet ahead of the train. * * * I was sitting then on the end or edge of the car nearest McKernan before I ever saw McKernan, and when I first saw him he was not on the railway track nor near the train. So I did not watch him, but turned to make a signal to the engineer that the switch was turned. When I had given this signal I again looked down the track and saw McKernan. He was then walking ahead of the train in the middle of the track, and about fifteen or twenty feet ahead of the train. I hallooed to him, expecting him to get off the track. [McKernan says he heard this halloo and turned round, but the car was right upon him.] McKernan did not get off the track, but looked back, and about this time the link in the middle of the end of the car struck him in the back, and this knocked him to the right or the west side of the railway track, and the corner of the car knocked him off the track, except one leg, and it was run over by one wheel of one truck or two wheels of one truck, I can not state positively which, but I know that not more than two wheels passed over him. * * * I did not see him step on the track. At the time that McKernan was struck the train was moving at the rate of about six miles per hour. * * * Just previous to the accident he was walking west of the track, and would not have been injured by the train if he had remained there."

Allen Kelley was fireman of the engine, and testified that he was ringing the bell at the time of the accident. "The train was moving slowly, at the rate of about three miles per hour. I rung the engine bell and Charley Arnold blew the whistle."

Charles Arnold, the engineer, testified: "I was on the west side of the engine, looking south down the railway track, when I first saw Mc-

Kernan. He was then about thirty or forty yards ahead of the front end of the front car, walking on the ground, about ten feet, I suppose, west of the railway track. The train was moving in the same direction. The engine was headed south, and had no cars behind it, but had the two empty cars ahead, shoving them. I had the engine reversed and was slowing up for the switch when McKernan stepped on the railway track, as I supposed, to cross over the track to the east side of the track. McKernan stepped on the track about twenty feet ahead of the train. Just about that instant the switchman, Joe Watson, gave me a signal to come ahead, the switch was all right, meaning for me to increase speed. Instead of this I whistled for brakes, having seen McKernan step on the track. I also instantly gave the engine steam in the back motion, but I could not possibly stop the train till one pair of wheels had passed over McKernan's leg. * * * I was giving my entire attention to the moving of the train and to McKernan. At the time of the accident I was doing all that I could do to stop the train. * * * Bion Allen set one brake, and I gave steam to the engine in back motion. Allen Kelley was ringing the bell at the time of the accident and before. The crew on the train did all that could be done to stop the train after McKernan stepped on the track. The efforts of the crew were not successful in preventing the accident, because McKernan was too near the train when he stepped on the track. McKernan was not over twenty feet from the train when he stepped on the railway track. At the time McKernan was struck the train was not moving faster than at the rate of three miles an hour, for the two wheels passed a very short distance over him. When I first saw him the train was moving at the rate of about five or six miles per hour. He had every opportunity to see and hear the train and whistle and bell of the engine; but we had a very short time after I blew the whistle, for I felt the moment that I saw McKernan step on the track that it would be impossible to prevent an accident. * * *, He was walking on the ground west of the railway track just previous to the accident, and would not have been hurt if he had remained or continued to walk there."

Judgment below was for appellee against appellants in the sum of $5000.

[This statement accompanied the opinion as part of it.]

*Barnard & Green,* for appellants.—The evidence clearly shows that the plaintiff was guilty of contributory negligence in coming upon the track, that he was in splendid physical condition, that danger was imminent when plaintiff came upon the track, and that defendants could not possibly have avoided the injury to plaintiff. Plaintiff is therefore not entitled to damages. Hoover v. Railway, 61 Texas, 503; Railway v. Smith, 52 Texas, 178; Railway v. Bracken, 59 Texas, 74; Rail-

way v. Richards, 59 Texas, 373; Railway v. Smith, 62 Texas, 252; Hughes v. Railway, 67 Texas, 595; Railway v. Ryon, 70 Texas, 56.

*L. F. Price*, for appellee.—1. The pleadings and evidence show gross negligence on the part of defendants' employes.   Hays v. Railway, 70 Texas, 602; Railway v. Kuehn, 70 Texas, 582; Railway v. Crosnoe, 72 Texas, 79.

2.   Persons operating a railway train, seeing one upon the track in the direction it is going, have a right to presume that he will step off in time to avoid a collision; "but if he does not and is injured, then a case arises in which the jury must determine whether the injury resulted from the contributory negligence of the person injured or from the failure of the servants of the company to exercise due care under the circumstances."   Artusy v. Railway, 73 Texas, 191; Railway v. Hewitt, 67 Texas, 480; Hays v. Railway, 70 Texas, 603.

FISHER, JUDGE, *Section B.*—Several errors are assigned which we will not notice, as we dispose of this case on the facts.   We regard it unnecessary to discuss the rules of law that govern and control in cases of this character.   They are so well settled in this State that no useful purpose could be gained in repeating them.   We can not permit this judgment to stand.   A careful consideration of the facts as shown in the record convinces us that appellee was guilty of contributory negligence in placing himself upon the track in front of the moving train, and that the servants of appellants under the circumstances used the degree of diligence necessary to avert the danger and to prevent the injury.

We report the case for reversal.

*Reversed and remanded.*

Adopted November 10, 1891.